United States District Court
Southern District of Texas
**ENTERED**
February 03, 2021
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. 4:10-CR-193 |
| | § | |
| BOA VAN HOANG, | § | |
| *Defendant*. | § | |

**ORDER**

Boa Van Hoang ("Hoang"), a federal prison inmate, asks the Court to grant his motion for compassionate release by modifying his sentence from a 178-month sentence to a time-served sentence or by allowing him to spend the rest of his sentence in home confinement, as a condition of supervised release. (Doc. No. 99). He moved under 18 U.S.C. § 3582(c)(1)(A), relying on the threat of infection from the COVID-19 virus and his alleged susceptibility to that virus because of his underlying physical conditions. The government opposed the motion. (Doc. No. 102).

Based on careful consideration of the briefs, the record, and the applicable law, the Court denies Hoang's motion for compassionate release.

The reasons for this ruling are set out below.

## I.   Background

Hoang pleaded guilty in this Court to a charge of conspiracy to distribute over five (5) kilograms of cocaine. He also pleaded guilty in the Eastern District of Wisconsin to a charge of conspiracy to possess with intent to distribute over 1,000 kilograms of marijuana. He was sentenced to 225 months in the Texas case and 100 months in the Wisconsin case with the sentences to run concurrently. In 2015, this Court granted a motion under 18 U.S.C. § 3582(c)(2)

to reduce his 225-month sentence to 178 months due to a retroactive change in the Sentencing Guidelines. With credit for his time in custody, he has now served just over 102 months of his sentence or just under 60% of his sentence. He is currently located at the Rivers Correctional Institute in Winton, North Carolina. With credit for good time, his scheduled release date is currently September 23, 2024.

His original guideline range was enhanced because of his leadership role in his drug trafficking organization, and because he was instrumental in illegally importing marijuana into the United States from Canada and cocaine into the United States from Mexico. He had been involved in the drug trade since 1999. At the time, he admitted that he illegally imported approximately 20 kilograms of cocaine and 200-250 pounds of marijuana a month for years. He became a legal permanent resident of the United States during the pendency of this case, but fled to Canada on two different occasions before he was finally recaptured in February of 2010.

Accordingly, when considering any motion filed pursuant to 18 U.S.C. § 3582, the Court must also consider its duty to protect the public from future crimes of the defendant. Hoang has repeatedly committed crimes since 1999 and has fled from the resulting prosecution. Hoang argues that he should be released due to the COVID-19 pandemic and his allegedly enhanced susceptibility to the virus while in custody. He contends that: 1) he is a non-violent offender; 2) he has served 9 years of his almost 15-year sentence; and 3) the Court should convert this sentence to time served or release him to home confinement.

First, this Court takes issue with the contention that someone who has made a career of distributing potentially deadly drugs is a non-violent offender. Just because an individual dealer has not shot someone does not mean that the drugs he/she deals do not wreak havoc and sow the seeds of violence throughout our communities. Drug overdose deaths now annually average

between 60,000 and 70,000 individuals. In fact, in 2019 deaths due to drug overdose exceeded

70,000.[1] In addition, the lives destroyed without an actual death are innumerable. Each death is a

tragedy and each tragedy has a ripple effect felt well beyond the individual's families and

friends. Moreover, the vast majority of the most sought-after illegal drugs (including the cocaine

Hoang distributed) are imported over the Mexican-United States border by members or agents of

vicious drug cartels. It is well-documented that these cartels sow chaos and commit violent acts

on both sides of the border and that their activities are primarily financed by those, like Hoang,

selling drugs in the United States.

With respect to the fact Hoang has served, by this Court's calculation, just over 70% of

his sentence, the Government strongly and correctly contends that:

> The defendant's COVID-related concerns do not constitute extraordinary and
> compelling reasons under the compassionate-release statute. Section
> 3582(c)(1)(A) provides that any reduction must be "consistent with applicable
> policy statements issued by the Sentencing Commission." 18 U.S.C. §
> 3582(c)(1)(A). Here, the applicable policy statement, USSG § 1B1.13, provides
> no basis for a sentence reduction based on COVID-19. Rather, the policy
> statement allows a reduction for "extraordinary and compelling reasons" only if
> the reasons are "consistent with this policy statement." USSG §§ 1B1.13(1)(A) &
> (3). Application note 1 to the policy statement then explains that "extraordinary
> and compelling reasons exist under any of the circumstances set forth below,"
> which include only (a) a defendant suffering from a terminal illness or other
> medical condition "that substantially diminishes the ability of the defendant to
> provide self-care within the environment of a correctional facility and from which
> he or she is not expected to recover"; (b) a defendant at least 65 years old who "is
> experiencing a serious deterioration in physical or mental health because of the
> aging process" and "has served at least 10 years or 75 percent of his or her term of
> imprisonment, whichever is less"; (c) a defendant who has minor children without
> a caregiver or with an incapacitated spouse or partner who needs the defendant to
> be the caregiver; or (d) "[a]s determined by the Director of the Bureau of Prisons,
> . . . an extraordinary and compelling reason other than, or in combination with,
> the [above] reasons." USSG § 1B1.13, comment. (n.1).

> With regard to the last consideration relating to the extraordinary and compelling
> reasons, BOP has issued a regulation defining its own consideration of

---

[1] National Center for Health Statistics, & Centers for Disease Control and Prevention (2020). Provisional Drug
Overdose Death Counts. https://www.cdc.gov/nchs/nvss/vsrr/drug-overdose-data.htm

compassionate-release requests. *See* BOP Program Statement 5050.50, *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf. This program statement was amended effective January 17, 2019, following the First Step Act's passage. It sets forth in detail BOP's definition of the circumstances that may support a request for compassionate release, limited to the same bases the Sentencing Commission identified: serious medical condition, advanced age, and family circumstances.

Neither policy statement nor the BOP regulation provides any basis for compassionate release based on general COVID-19 concerns. Rather, the grounds for compassionate release the Commission identified are all based on inherently individual circumstances—health, age, and family responsibilities—and nothing remotely comparable to the general COVID-19 concerns that thousands of offenders could cite in compassionate-release motions.

(Doc. No. 102 at 4–6) (footnotes omitted).

Clearly, the fact that the defendant is 46 years old and has served a little more than half of his sentence does not qualify him for relief.

Hoang's final argument is that the Court could order home confinement. This argument is also less than persuasive. Hoang has twice fled the jurisdiction of the federal courts, and there are no circumstances or conditions that would prevent him from doing it again. Moreover, once released from custody, he would in all likelihood have to face immigration issues.

The only realistic argument that Hoang has for the kind of relief he is requesting is that the combination of the COVID-19 crisis, the difficulty of achieving or maintaining social distancing while in custody, and his own physical condition combine to create an extraordinary and compelling reason. As stated earlier, Hoang is held in the Rivers Correctional Institute in North Carolina. Hoang contends that he is particularly susceptible to COVID-19 because of his age and the fact that he has diabetes and hepatitis B. According to the Center for Disease Control (using ages 18-29 as its baseline age group), an individual who is 46 years old is 3 times more

likely to require hospitalization for COVID-19 than the comparison group.[2] A person with diabetes is 3 times more likely to be hospitalized than one who does not have that condition. The relationship between hepatitis B and COVID-19 is not established. "It remains unclear whether COVID-19 leads to worse outcomes in patients with pre-existing hepatitis B or C infection . . . There is scant evidence right now that hepatitis itself makes patients more vulnerable to COVID-19 or more likely to do poorly, unless they already have end-stage liver disease."[3] According to the medical records, Hoang does not have end-stage liver disease. Consequently, based upon the current thinking it cannot be considered a comorbidity to COVID-19. While the state of knowledge concerning COVID-19 continues to grow exponentially, it is safe to conclude that Hoang is more likely to need more specialized care and possibly face more severe health consequences should he contract COVID-19 than someone younger or someone his age without diabetes.

Both sides agree that the Government has implemented, and then increased, the COVID-19 prevention measures in the Bureau of Prisons. Both sides appear to agree that these measures cannot ensure that an inmate does not get exposed to and catch the virus. The parties do not agree on how effective these measures are, and they disagree on the extent to which Hoang may actually be at risk of contracting the disease. At this time and with this record, there is no way that this Court can evaluate the effectiveness of those measures with any precision, especially with regard to the safety of one specific individual as opposed to the overall population. Quite frankly, given the state of flux between the experts in this area, the Court has some doubt as to whether even highly trained infectious disease specialists could reach a general consensus on this issue.

---

[2] *See* Centers for Disease Control and Prevention (2020). COVID-19 Hospitalization and Death by Age. https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html
[3] Rodriguez, "Hepatitis B and C Considerations in COVID-19," *Infectious Disease Advisor* (July 15, 2020).

The legal question before the Court is whether this fact situation presents an extraordinary and compelling reason to reassess Hoang's sentence. Obviously, Hoang thinks it does and asks this Court to resentence him to "time-served" or "home confinement." The Government opposes any adjustment.

Thus, the ultimate question before the Court is whether the general concerns about contracting COVID-19 by an inmate with proven (at least as far as medical science is able to tell today) comorbidities of age and diabetes, which increase the severity of the illness should it be contracted, outweighs the need to keep him incarcerated.[4]

## II.    Analysis

Section 3582(c)(1)(A)(ii) requires any sentence reduction to be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(ii). The policy statement allows a reduction for "extraordinary and compelling reasons," only if the reasons are "consistent with this policy statement." U.S. SENTENCING GUIDELINES MANUAL § 1B1.13(1)(A), (3) (U.S. SENTENCING COMM'N 2018). Application Note 1 explains that "extraordinary and compelling reasons exist under any of the circumstances set forth below." *Id.* § 1B1.13 cmt. n.1. These circumstances are: (a) suffering from a terminal illness or other medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (b) being at least 65 years old and "experiencing a serious deterioration in physical or mental health because of the aging process" and having "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less"; (c) the "death or incapacitation of the caregiver of the defendant's minor child or minor children" or the "incapacitation of the

---

[4] The CDC states that "COVID-19 is a new disease. Currently there are limited data and information about the impact of underlying medical conditions and whether they increase the risk of severe illness from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner"; or (d) "[a]s determined by the Director of the Bureau of Prisons, . . . an extraordinary and compelling reason other than, or in combination with, the [above] reasons." *Id.* § 1B1.13 cmt. n.1.

Courts differ on whether Application Note 1 remained binding after Congress passed the First Step Act. *Compare United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) ("U.S.S.G. § 1B1.13 cmt. n.1(D) no longer describes an appropriate use of sentence-modification provisions and is thus not part of the applicable policy statement binding the Court."), *with United States v. Saldana*, No. 19-7057, 2020 WL 1486892, at *3 (10th Cir. Mar. 26, 2020) (the district court did not err by considering § 1B1.13 commentary when determining whether an "extraordinary and compelling reason" existed that warranted a sentence reduction).

Hoang claims that his underlying preexisting conditions increase the risk of severe consequences if he is infected with COVID-19. As noted above, Hoang is 46 years old, and suffers from diabetes and hepatitis B. Certainly, the first two are known comorbidity factors in cases of COVID-19 infection and the last factor has also been associated with increased severity. Hoang contends that if he were to contract COVID-19, his underlying conditions mean that he would be at high risk of severe symptoms, from which he would not be expected to recover fully. U.S.S.G. § 1B1.13 cmt. n.1(A).

The Court finds that Hoang exhausted his administrative remedies but that he has not shown extraordinary and compelling reasons that might warrant reducing his sentence to time served or home confinement. The Court finds the need to protect the public from future crimes of the defendant and afford adequate deterrence to criminal conduct to be the pivotal issues. The need to keep Hoang incarcerated given his past history of criminal activity and of fleeing the

jurisdiction far outweighs the reasons put forth for converting his sentence to time served or ordering the remainder of that sentence to be served in home confinement.

## III.    Conclusion

The Court denies Hoang's motion for compassionate release. (Doc. No. 99).

SIGNED at Houston, Texas this 3rd day of February, 2021.

Andrew S. Hanen
United States District Judge